**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOHN CARMACK,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Case No. 3:17-cv-00661-K |
| | § | |
| **ZENIMAX MEDIA INC.,** | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**DEFENDANT'S AMENDED COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

Richard A. Smith
  Texas Bar No. 24027990
  richard@rsmithpc.com
**RICHARD SMITH, P.C.**
Campbell Centre I
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Phone: (214) 242-6484
Fax: (214) 265-1950

Elizabeth Y. Ryan
  Texas Bar No. 24067758
  eryan@lynnllp.com
**LYNN PINKER COX & HURST LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Phone: (214) 981-3821
Fax: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF**
**JOHN CARMACK**

**TABLE OF CONTENTS**

ARGUMENT & AUTHORITIES ................................................................................................1

    1.    ZeniMax Has Not Identified Any Plausible Injury Caused by an Alleged Breach. ..............................................................................................................................1

    2.    ZeniMax Has Not Identified Any Specific Implied Contractual Obligation. ...........3

    3.    Unjust Enrichment Is Still Just a Remedy. ...............................................................4

    4.    ZeniMax Has Not Identified Any Plausible Injury or Causation for Breach of Fiduciary Duty and Fraud. ....................................................................................4

    5.    ZeniMax Still Has Not Identified Any Specific Corporate Opportunity. .................7

    6.    ZeniMax's Retroactive Termination Theory Is Contrary to the Contract. ...............7

    7.    ZeniMax Has Not Identified Any Explanation for Its Seven Boilerplate Defenses. ..................................................................................................................8

    8.    The After-Acquired Evidence Doctrine Does Not Support Retroactive Termination. ...............................................................................................................9

    9.    ZeniMax's Performance of the APA Is Not Excused by Any Claimed Breach of the Employment Agreement. ....................................................................10

CONCLUSION & PRAYER ........................................................................................................10

CERTIFICATE OF SERVICE .....................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................................................. 1, 2

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................................. 1, 2

*Broz v. Cellular Info Sys., Inc.*,
　673 A.2d 148 (Del. 1996) ............................................................................................... 7

*Exxon Corp. v. Emerald Oil & Gas Co.*,
　348 S.W.3d 194 (Tex. 2011) ...................................................................................... 6, 7

*Guth v. Loft, Inc.*,
　5 A.2d 503 (Del. 1939) ................................................................................................... 7

*Hanks v. GAB Bus. Servs., Inc.*,
　644 S.W.2d 707 (Tex. 1982) ......................................................................................... 10

*Kuroda v. SPJS Holdings, LLC*,
　971 A.2d 872 (Del. Ch. 2009) ......................................................................................... 3

*McKennon v. Nashville Banner Publ'g Co.*,
　513 U.S. 352 (1995) ......................................................................................................... 9

*Republic Title of Tex., Inc. v. First Republic Title, LLC*,
　2015 WL 1914635 (N.D. Tex. 2015) .............................................................................. 9

## ARGUMENT & AUTHORITIES

**1.     ZeniMax Has Not Identified Any Plausible Injury Caused by an Alleged Breach.**

Mr. Carmack moved to dismiss ZeniMax's counterclaim for breach of contract because the pleading fails to allege any causal connection between the alleged breach and the injury claimed by ZeniMax – namely, that his continued possession of supposedly confidential information somehow destroyed its value to ZeniMax.[1] "[D]estroying the value of confidential and proprietary information" is the only basis that ZeniMax pled for damages on its breach of contract claim.[2] How, then, does ZeniMax plead a causal connection between the alleged acts of breach and destroying the value of "confidential and proprietary information"? It doesn't.

In response, ZeniMax does not dispute that the mere possession of confidential information does not destroy its value. Instead, ZeniMax points to fleeting statements elsewhere in its amended counterclaims that purportedly allege Mr. Carmack actually used or disclosed confidential information.[3] But those references are conclusory and do not state a plausible connection between any alleged breach and the destruction of the value of information that ZeniMax claims as its damages. To sustain its breach of contract claim, ZeniMax must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). ZeniMax must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[1] *See* Def.'s Answer & Affirmative Defenses to Pl.'s Second Am. Compl. & Am. Countercl. [&] Answer to Second Am. Compl. ("Answer," Doc. 57) at 72-73 (¶ 136).

[2] *See id.*

[3] *See* ZeniMax's Opp. to Pl.'s Mtn to Dismiss ZeniMax's Am. Countercl. and Aff. Defenses ("Opp.," Doc. 62) at 4-8 (bullet pointing alleged breaches, then reciting the allegation that "Oculus's business was built on stolen technology from ZeniMax.").

ZeniMax points to three bullet-pointed sets of allegations that it claims demonstrate a causal connection between the alleged breaches and the claimed "destruction" of value injury:

- First, ZeniMax points to a passing set of assertions that Mr. Carmack somehow "used" confidential information – but those statements only generically allege "use" without identifying what information was used, how it was used, or how any such use destroyed any value.[4] Such generic statements do not satisfy *Twombly* and *Iqbal*.

- Second, ZeniMax references allegations that Mr. Carmack communicated with Oculus personnel regarding VR "technology" – but again, none of those allegations identify what the technology was, what was done with it, or how its value was destroyed.[5]

- Third, ZeniMax discusses allegations that Mr. Carmack "sought to conceal" his alleged "improper possession, use, and disclosure" of ZeniMax's information by deleting evidence from various electronic devices[6] – an assertion that does not support any element of a breach of contract claim, much less the causation element.[7]

After identifying those three sets of conclusory and inadequate allegations, ZeniMax reiterates its assertion that Mr. Carmack's actions destroyed the value of ZeniMax's information by helping Oculus develop its VR headset.[8] But that simply assumes away the causation problem. Even setting aside ZeniMax's implicit concession that mere possession of confidential information could not destroy its value to ZeniMax,[9] the remaining allegations of use or disclosure are too vague and undefined (or, as with spoliation, irrelevant) to supply a plausible causal link. Thus, the Court should dismiss the breach of contract counterclaim.

---

[4] *See* Opp. at 5 (citing and quoting Answer at 19-20 (¶¶ 95-97) & 61 (¶ 91)).

[5] *See* Opp. at 6 (citing and quoting Answer at 54 (¶ 64), 57-58 (¶ 79) & 59 (¶ 81). ZeniMax closes this bullet-point list by citing the allegation that Carmack's research at ZeniMax "transformed" the Rift into "a powerful, immersive virtual reality experience" – an allegation that, once again, fails to identify any particular confidential information or explain how its value was destroyed. *See* Opp. at 6 (citing and quoting Answer at 52 (¶ 57)).

[6] *See* Opp. at 6-7 (citing Answer at 19 (¶ 96) & 69 (124-25).

[7] *See* Answer at 71 (¶ 135) (alleging five different categories of breach, none of which are based on any alleged spoliation); *see also id.*at 19 (¶ 96) & 69 (124-25) (pleading allegations of alleged deletion or "wiping," without asserting that it would be a breach of contract).

[8] *See* Opp. at 7-8.

[9] *See* Opp. at 5 ("ZeniMax does not merely allege that Carmack 'possessed' ZeniMax's confidential and proprietary information.").

**2.      ZeniMax Has Not Identified Any Specific Implied Contractual Obligation.**

Mr. Carmack moved to dismiss ZeniMax's claim for breach of the duty of good faith and fair dealing because Delaware law – which governs the Asset Purchase Agreement ("APA"), Convertible Promissory Note, and Stockholder's Agreement – requires a claimant to "allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009). ZeniMax fails to demonstrate that such an allegation can be found in its counterclaims.

Instead of showing that it <u>did</u> state a proper claim for relief, ZeniMax simply argues (without reference to its pleading) that "There is no express provision in the APA that governs post-acquisition negotiations for potential development partnerships . . . ."[10] Proceeding from that assertion, ZeniMax argues that the APA somehow implies that "ZeniMax – and only ZeniMax – would be able to control those negotiations, particularly as they directly affected assets that had been conveyed subject to the APA."[11] Even setting aside that ZeniMax never pled such an allegation, it would still fail to state an implied contractual obligation and allege how it frustrated the purpose of the APA. The APA is a contract for the sale and purchase of specific assets of id Software, Inc. as they existed on June 23, 2009. That purpose is explicitly stated on the first page of the contract.[12] The APA is silent about "post-acquisition negotiations for potential development partnerships" because such matters are alien to the contract's purpose of selling and assigning the "Acquired Assets" to the entity now known as id Software, LLC. And even if ZeniMax had actually pled its theory of an implied term relating to "post-acquisition

---

[10] Opp. at 12-13.

[11] *Id.*

[12] APA at 1 (Apx. 10) ("Sellers desire to sell, transfer, and convey to Buyer, and the Buyer desires to acquire from the Sellers, the Acquired Assets . . . upon the terms and subject to the conditions set forth in this Agreement.").

negotiations for potential development partnerships," it still could not show that a violation of its imaginary post-closing obligation would have denied ZeniMax the fruits – *i.e.*, the Acquired Assets – of the APA. Thus, the Court should dismiss the good faith and fair dealing claim.

3. **Unjust Enrichment Is Still Just a Remedy.**

ZeniMax cites cases where, contrary to this Court, other judges have referred to unjust enrichment as a cause of action. But faced with that same case law in the *Oculus* lawsuit, this Court plainly ruled: "The Court agrees with Carmack and Iribe that unjust enrichment is a remedy which attaches to another cause of action" – *i.e.,* that it is not an independent cause of action in its own right. *See* Mem. Op. & Order at 20, *ZeniMax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-01849-K (Dec. 9, 2016, Doc. No. 788). Because other causes of action remained that sought the remedy of unjust enrichment, the court declined to dismiss ZeniMax's claim at that time. *Id.* But the Court refused to submit unjust enrichment as an independent action, instead submitting it only as a potential remedy for some of ZeniMax's actual causes of action.

Here, the Court should dismiss unjust enrichment as a cause of action. Even if other claims are allowed to proceed, the ZeniMax has already pleaded unjust enrichment as one of the remedies it seeks in its prayer,[13] and Mr. Carmack is not asking to strike that pleading. The Court should not retain an invalid cause of action just because it has the same name as a remedy.

4. **ZeniMax Has Not Identified Any Plausible Injury or Causation for Breach of Fiduciary Duty and Fraud.**

Mr. Carmack moved to dismiss the counterclaims for breach of fiduciary duty and fraud because ZeniMax did not identify what its injuries are, and because it did not plead any causal link between the conduct and any injury. ZeniMax's response further highlights that deficiency.

---

[13] *See* Answer at 81.

On fiduciary duty, ZeniMax argues that it pled both damages and causation through allegations that Mr. Carmack "undermined" a prospective business arrangement between ZeniMax and Oculus by "downplaying" the value of his work on virtual reality and encouraging ZeniMax to accept "inadequate compensation terms."[14] Similarly, ZeniMax states that Mr. Carmack caused ZeniMax "to make misinformed business decisions in reliance of Carmack's advice . . . which caused it to miss out on its own opportunity to develop and partner on the development of VR technology."[15] In other words, ZeniMax claims that Mr. Carmack <u>encouraged the company to take a deal that it decided to reject because the financial terms were too inadequate</u>. That is the opposite of proximate cause, as ZeniMax affirmatively pleads that it decided to hold out for more money <u>despite</u> Mr. Carmack's alleged encouragement to take a lesser offer.[16] Accordingly, the Court should dismiss ZeniMax's breach of fiduciary duty claim.

The fraud claim fares no better. ZeniMax offers five bullet-pointed explanations of what it supposedly pled in its counterclaims, but none of those claims withstands scrutiny:

- <u>First</u>, ZeniMax claims that Carmack did not tell Palmer Luckey that ZeniMax might provide funding to Oculus, which "robbed ZeniMax of potential business opportunities valued at millions of dollars."[17] But <u>none</u> of the paragraphs ZeniMax cites contain any assertion that the failure to convey such a possibility deprived ZeniMax of a business opportunity. In fact, ZeniMax's allegations are to the contrary – it concedes that Oculus didn't want ZeniMax's funding.[18] ZeniMax cannot show causation of damages where its own pleading acknowledges that its prospective business partner was not interested in the transaction ZeniMax wanted to propose.

---

[14] *See* Opp. at 9 (citing Answer at 29-31 (¶¶ 4 &6), 55 (¶ 68) & 55-57 (¶¶ 72-76)).

[15] *Id.* (citing Answer at 54-55 (¶¶ 64 &71) & 57-82 (¶¶ 77-82)).

[16] *See* Answer at 56 (¶ 74) ("ZeniMax informed Oculus and Carmack that the proposal was not commensurate with the importance and magnitude of ZeniMax's assistance, and rejected the offer.").

[17] *See* Opp. at 9 (citing Answer at 30 (¶ 5), 53-54 (¶ 63) & 76-77 (¶ 158)).

[18] *See* Answer at 54 (¶ 63) ("Luckey, Iribe and others planned to retain ownership of Oculus, obtain needed VR technology for the business from Carmack, and exploit it themselves.").

- <u>Second</u>, ZeniMax argues that Mr. Carmack "repeatedly transferred ZeniMax's virtual reality technology to Oculus without keeping ZeniMax's management informed, causing damage to ZeniMax's negotiating position with Oculus."[19] But <u>none</u> of the paragraphs ZeniMax cites actually claim that Mr. Carmack's assistance to Oculus harmed ZeniMax's negotiating position. To the contrary, ZeniMax expressly touts "the importance and magnitude of ZeniMax's assistance" as the basis for its demand for <u>more</u> equity from Oculus, thereby conceding that whatever assistance Carmack allegedly provided had actually <u>strengthened</u> ZeniMax's hand in negotiations.[20]

- <u>Third</u>, ZeniMax claims Mr. Carmack "fraudulently assured" ZeniMax that he wanted to work in the company's "best interest," which supposedly caused ZeniMax "to continue to make misinformed business decisions in reliance on Carmack's advice."[21] But once again, <u>none</u> of the paragraphs ZeniMax cites actually allege that it made misinformed business decisions based on Carmack's "best interest" assurance, and the assertion is obviously contradicted by ZeniMax's allegation that it disregarded Mr. Carmack's advice by demanding more equity than Oculus was willing to offer.[22]

- <u>Fourth</u>, ZeniMax repeats its contention that Mr. Carmack "wiped files on computers and destroyed evidence, causing harm to ZeniMax's ability to discover and present evidence of injury to the court in the Oculus Action."[23] But that allegation cannot possibly support causation or damages on a claim for fraud, because fraud requires pleading and proof of a misrepresentation by the defendant and reliance on the misrepresentation by the claimant. *See, e.g., See, e.g., Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) (reciting elements of fraud, all of which involve misrepresentations, not spoliation).

- <u>Fifth</u>, ZeniMax claims Mr. Carmack deprived ZeniMax of "the reputational benefits it deserved for investing in and developing the technology" and "caused harm to ZeniMax's goodwill" because he supposedly "supported the dissemination to the media of a completely false cover story that Palmer Luckey invented" the Rift headset.[24] But again, neither of the paragraphs ZeniMax cites as support relate in any way to "reputational benefits" or "goodwill." Even if ZeniMax had actually pled such harms, the problem remains that "disseminating" a "false story" to "the media" cannot possibly

---

[19] Opp. at 9 (citing Answer at 30-32 (¶¶ 5 & 7), 57-59 (¶¶ 77-83) & 76-77 (¶ 158)).

[20] *See* Answer at 56 (¶ 74).

[21] Opp. at 9 (citing Answer at 54-55 (¶¶ 64-71) & 57-59 (¶¶77-82)).

[22] *See* Answer at 56 (¶ 74) ("ZeniMax informed Oculus and Carmack that the proposal was not commensurate with the importance and magnitude of ZeniMax's assistance, and rejected the offer."). ZeniMax also reiterates its contention that Mr. Carmack "stole enormous amounts of ZeniMax's documents and technology," an allegation that does not even remotely resemble a claim for fraud. *See, e.g., Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) (reciting elements of fraud, all of which are based on misrepresentation, not theft).

[23] *See* Opp. at 10 (citing Answer at 31-32 (¶ 7) & 68-71 (¶¶ 121-31)).

[24] *See* Opp. at 10 (citing Answer at 31 (¶ 6) & 65 (¶ 103)).

support damages <u>to ZeniMax</u> for fraud, since the allegation does not involve a misrepresentation <u>to ZeniMax</u> and its reliance thereon. *See Exxon*, 348 S.W.3d at 217.

In short, ZeniMax is simply throwing everything it can think of against the wall and hoping that some of it might stick. The Court should reject those efforts and dismiss ZeniMax's counterclaims for breach of fiduciary duty and fraud.

**5.  ZeniMax Still Has Not Identified Any Specific Corporate Opportunity.**

Mr. Carmack moved to dismiss the "Usurpation of Corporate Opportunity" counterclaim because it failed to identify any specific opportunity that Mr. Carmack usurped for himself. In response, ZeniMax contends that Mr. Carmack "usurped ZeniMax's corporate opportunity to develop its virtual reality technology and kept the profits from those efforts for himself."[25] That blanket contention simply confirms ZeniMax's failure to plead any particular business opportunity that ZeniMax was denied. "Virtual reality technology" is a generic concept that cannot support a claim for usurpation of business opportunity, because that claim requires pleading and proof that someone <u>presented</u> a business opportunity to the defendant that the defendant should have disclosed to the company instead of pursuing the opportunity personally. *See, e.g., Broz v. Cellular Info Sys., Inc.*, 673 A.2d 148, 154 (Del. 1996) (quoting *Guth v. Loft, Inc.*, 5 A.2d 503, 510-11 (Del. 1939)). Because ZeniMax has not pled any particular business opportunity that anyone presented to Mr. Carmack, the Court should dismiss the claim.

**6.  ZeniMax's Retroactive Termination Theory Is Contrary to the Contract.**

Mr. Carmack moved to dismiss the counterclaim for money had and received because ZeniMax's theory of retroactive termination of employment was contrary to the express and unambiguous terms of the APA and the Employment Agreement. ZeniMax's theory is that on

---

[25] Opp. at 15.

June 23, 2017, the company and its board of directors invoked "Tier II Cause" under the Employment Agreement to retroactively terminate Mr. Carmack's employment effective as of June 20, 2013. That act purportedly relieved ZeniMax of any obligation for the final cash payment under Mr. Carmack's Term Promissory Note, which was due on June 23, 2013 and actually paid shortly thereafter.[26] But as Mr. Carmack noted in his opening brief, that theory is wholly invalid because section 15.2 of the Employment Agreement expressly provides that the effective date of a termination for Tier II Cause is the date of the "Tier II Cause Notice." In response, ZeniMax tries to claim that the date of "Termination for Tier II Cause" is somehow different than the date of the "Tier II Cause Notice." But section 15.2 is perfectly clear on this point, providing that "the company may terminate Employee for Tier II Cause effective as of the date of the Tier II Cause Notice . . . ."[27] Thus, ZeniMax's time-traveling theory of retroactive termination is contrary to the express terms of the Employment Agreement, and the Court should therefore dismiss the money had and received claim.

### 7.     ZeniMax Has Not Identified Any Explanation for Its Seven Boilerplate Defenses.

ZeniMax does not dispute that its seven boilerplate affirmative defenses fail to identify any allegations that the defenses are based on. Instead, ZeniMax assets that Mr. Carmack (and the Court) should look elsewhere in its pleading to divine the factual bases of those defenses, though ZeniMax does not cite to any of those extrinsic allegations itself. As a result, Mr. Carmack can only guess what defenses like "failure to join indispensable parties" and "failure to

---

[26] *See, e.g.,* Am. Answer at 14-15 (Fourth Affirmative Defense, explaining the theory of retroactive termination); *see also* Employment Agreement § 15.2 (Apx. 140-41) (providing grounds and procedures for ZeniMax to invoke "Tier II Cause" to terminate Mr. Carmack's employment); APA § 9.09(a) (Apx. 63-64) (providing for termination of right to receive cash payment under Convertible Note if employment is terminated for Tier II Cause "[a]fter the Closing . . . and until the fourth (4th) anniversary of the Closing Date . . . .").

[27] Apx. 141 (emphasis added).

act reasonably to mitigate damages" are supposed to be based on, and that is the epitome of a lack of fair notice.  *See Republic Title of Tex., Inc. v. First Republic Title, LLC*, 2015 WL 1914635, at *1 & n. 3 (N.D. Tex. 2015).  The Court should therefore strike ZeniMax's Seventh, Ninth, Tenth, Eleventh, Thirteenth, and Fourteenth affirmative defenses.

**8.     The After-Acquired Evidence Doctrine Does Not Support Retroactive Termination.**

Mr. Carmack also moved to dismiss ZeniMax's Fourth and Eighth Affirmative Defenses, which are both based on that same invalid theory of retroactive termination discussed in section 6 above.  In response, ZeniMax claims that "retroactive termination of a former employee for cause" is actually "a well-recognized defense to a claim for breach of contract in both Texas and Delaware."[28]  But ZeniMax cites cases that discuss the "after-acquired evidence" doctrine, a defense in employment law that acts to cut off a terminated employee's <u>damages</u> as of a date the employer discovers it would have had grounds to terminate the former employee for cause.[29] *See, e.g., McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360-61 (1995).  None of the cases ZeniMax cites purports to actually make an employee's termination effective as of the date after-acquired evidence is discovered, much less do so as of a date long before the after-acquired evidence is discovered, and still less do they do so in contradiction of a written employment agreement expressly providing that termination is effective as of the date of notice.  Thus, the Court should strike the Fourth and Eighth Affirmative Defenses.

---

[28] Opp. at 21.

[29] *Id.* (citing cases).

**9.  ZeniMax's Performance of the APA Is Not Excused by Any Claimed Breach of the Employment Agreement.**

Finally, Mr. Carmack moved to dismiss ZeniMax's Sixth Affirmative defense – described as "Carmack's failure of performance, Carmack's material breaches of the referenced contracts, and/or ZeniMax's rights to setoff under those contracts" [30] – to the extent that it is based on claimed breaches of the Employment Agreement, rather than the APA and Convertible Note on which he is suing.  Mr. Carmack specifically sought to strike because the Employment Agreement is an independent covenant, not a dependent covenant – and only breach of a dependent covenant provides the non-breaching party the option to terminate the contract and cease its own performance.  *See Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982).  ZeniMax offers no response to that point, choosing instead to argue that the contracts are so intertwined that a breach of one is a breach of the other.  That argument is beside the point.  Mr. Carmack could plainly perform, or even fail to perform, the obligations of his Employment Agreement separately from the asset sale and assignment obligations that are the heart of the APA.  Thus, ZeniMax may have been able to sue for damages for breach of the Employment Agreement, but it is not entitled to refuse its own payment obligations under the APA.  The Court should therefore strike paragraphs 86-109 of the Sixth Affirmative Defense.

## CONCLUSION & PRAYER

For the foregoing reasons, the Court should dismiss each of ZeniMax's counterclaims for failure to state a claim.  In addition, the Court should strike ZeniMax's Fourth, Seventh, Eighth, Ninth, Tenth, Eleventh, Thirteenth, and Fourteenth Affirmative Defenses, as well as paragraphs 86-109 of its Sixth Affirmative Defense.

---

[30] *See* Answer at 15 (¶ 81).

DATED: October 5, 2017

                                        Respectfully submitted,

*/s/ Richard A. Smith*

Richard A. Smith
  Texas Bar No. 24027990
  richard@rsmithpc.com
**RICHARD SMITH, P.C.**
Campbell Centre I
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Phone: (214) 242-6484
Fax: (214) 265-1950

Elizabeth Y. Ryan
  Texas Bar No. 24067758
  eryan@lynnllp.com
**LYNN PINKER COX & HURST LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Phone: (214) 981-3821
Fax: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF
JOHN CARMACK**

## CERTIFICATE OF SERVICE

I hereby certify that, on October 5, 2017, the foregoing document is being served on counsel for Defendant ZeniMax Media Inc. via ECF.

*/s/ Richard A. Smith*
Richard A. Smith